1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11                         ----oo0oo----

12   JAMES ARKENS,                    CIV. NO. 2:16-00951 WBS KJN

13            Plaintiff,              MEMORANDUM AND ORDER RE: MOTION
                                      TO DISMISS
14        v.

15   COUNTY OF SUTTER, RON
     SULLENGER, JIM WHITEAKER, DAN
16   FLORES, NATE BLACK, IN THEIR
     OFFICIAL CAPACITIES AS SUTTER
17   COUNTY EMPLOYEES, AND DOES 1-
     50,
18
              Defendants.
19

20                         ----oo0oo----

21

22        Plaintiff James Arkens brought this wrongful

23   termination and discrimination action against defendants the

24   County of Sutter (the "County"), County Board of Supervisors Ron

25   Sullenger, Jim Whiteaker, and Dan Flores, and County Auditor Nate

26   Black.  Defendants now move to dismiss plaintiff's Complaint for

27   failure to state a claim upon which relief can be granted

28   pursuant to Federal Rule of Civil Procedure 12(b)(6).

                                  1

1    I.    Factual and Procedural Background

2            The County hired plaintiff as its Chief Administrative

3    Officer ("CAO") on January 1, 2013 for a term of three years.

4    (Compl. ¶ 17, Ex. A (Docket No. 1).)  Between March 2013 and July

5    2014, plaintiff and Supervisor Sullenger had a strained working

6    relationship after Sullenger allegedly requested certain health

7    and retirement benefits that plaintiff explained could not be

8    provided. (Id. ¶¶ 23-26.)  In April 2015, County Auditor Black

9    informed the auditors, County Counsel's Office, the District

10   Attorney, and Sullenger that plaintiff had allegedly embezzled

11   $2.5 million from a County energy project. (Id. ¶¶ 32-34.)  The

12   following month, the Board of Supervisors (the "Board") allegedly

13   took plaintiff's performance evaluation off the agenda because of

14   the embezzlement accusations. (Id. ¶ 27.)  Plaintiff and

15   Supervisor Whiteaker's working relationship allegedly

16   deteriorated shortly thereafter. (Id. at ¶ 29.)  In July or

17   August of 2015, plaintiff allegedly informed Supervisor Flores

18   that a contemplated land purchase presented a conflict of

19   interest for Flores and other county officials. (Id. ¶ 37.)

20           In September 2015, plaintiff went on medical leave

21   because he was experiencing frequent panic attacks and "felt very

22   awkward because of the daily treatment by his superiors and

23   County Officials." (Id. ¶ 46.)  On October 15, 2015, without

24   providing plaintiff an opportunity to rebut the embezzlement

25   accusations, the Board informed plaintiff that it did not intend

26   to renew his contract and allegedly told him that, "if he did not

27   immediately accept the County's Offer to resign, he would be

28   placed on Administrative leave." (Id. ¶ 20.)  Plaintiff was

                                    2

1   placed on administrative leave and was allegedly constructively

2   discharged.  (Id. ¶¶ 22, 46.)

3       In addition to the embezzlement accusations, the Board

4   allegedly placed plaintiff on administrative leave and decided

5   not to renew his contract because of plaintiff's age.  (Id. ¶¶

6   61-62.)  Prior to placing plaintiff on administrative leave,

7   several Supervisors allegedly "made comments" about plaintiff's

8   age and "commented out loud" about when he would retire.  (Id. ¶

9   42.)

10      Plaintiff initiated this action in May 2016 and asserts

11  claims for (1) wrongful discharge in violation of public policy

12  against all defendants; (2) defamation against the County and

13  Black; (3) violation of the Age Discrimination in Employment Act

14  of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, against the County,

15  Sullenger, Whiteaker, and Flores; (4) "federal and state

16  retaliation" against all defendants; (5) intentional infliction

17  of emotional distress against all defendants; and (6) negligent

18  infliction of emotional distress against all defendants.

19  Defendants now move to dismiss the Complaint in its entirety

20  pursuant to Rule 12(b)(6).

21  II.  Analysis

22      On a motion to dismiss under Rule 12(b)(6), the court

23  must accept the allegations in the complaint as true and draw all

24  reasonable inferences in favor of the plaintiff.  Scheuer v.

25  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

26  Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

27  319, 322 (1972).  To survive a motion to dismiss, a plaintiff

28  must plead "only enough facts to state a claim to relief that is

3

plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
entitle[ment] to relief' requires more than labels and
conclusions . . . ." <u>Twombly</u>, 550 U.S. at 555 (alteration in
original) (citations omitted).  "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice," and "the tenet that a court must
accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678.

 "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." <u>Id.</u> "Where
a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between
possibility and plausibility of entitlement to relief." <u>Id.</u>
(internal quotation marks and citation omitted).  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Id.</u>

 1. <u>Official versus Individual Capacity</u>

 Defendants contend that the claims against the
individual defendants should be dismissed because plaintiff sued
those defendants in their official capacities. (<u>See</u> Compl. ¶¶
12-15.)  Although unnecessary disputes and confusion frequently
arise based on the capacity in which a defendant is sued in the
complaint, determining the appropriate capacity from the

4

1   allegations in the complaint is neither impossible nor difficult.

2   Simply stated, if a plaintiff seeks to have a public officer pay

3   damages, the suit is generally against the officer in his

4   individual capacity; and if the plaintiff seeks to have the

5   public officer perform an official act, the suit is generally

6   against the officer in his official capacity.  See Price v.

7   Akaka, 928 F.2d 824, 828 (9th Cir. 1990); Biggs v. Meadows, 66

8   F.3d 56, 61 (4th Cir. 1995).  Because of this distinction, a

9   majority of the circuits have rejected the argument that a

10  plaintiff is required to allege the capacity in which a defendant

11  is sued.  Biggs, 66 F.3d at 59.  Instead, the majority approach

12  "look[s] to the substance of the plaintiff's claim, the relief

13  sought, and the course of proceedings to determine the nature of

14  a [] suit . . . ."  Id. (citing cases from the Second, Fifth,

15  Seventh, Ninth, Tenth, and Eleventh circuits).

16      The only relief plaintiff specifically requests in his

17  prayer for relief is damages,[1] and plaintiff can seek damages

18  against the officers only in their individual capacities.  The

19  court will therefore treat plaintiff's claims for damages against

20  Sullenger, Whiteaker, Flores, and Black as against them in their

21  individual capacities.

22      2.   *Tamney* Claim

23      Under the California Supreme Court's decision in Tameny

24  v. Atlantic Richfield Co., "when an employer's discharge of an

25  ─────────────

26      [1]   For the first time at oral argument, plaintiff informed
    the court and defendants that he intended his request "[f]or such
    other relief as the Court may deem proper" to include a request
27  that defendants reinstate him.  Such relief, if actually
    requested, would be against the officers in their official
28  capacities.

1   employee violates fundamental principles of public policy, the

2   discharged employee may maintain a tort action and recover

3   damages traditionally available in such actions."   27 Cal. 3d

4   167, 170 (1980).   Pursuant to California Government Code

5   subsection 815(a), however, "[a] public entity is not liable for

6   an injury, whether such injury arises out of an act or omission

7   of the public entity or a public employee or any other person,"

8   unless otherwise provided by statute.   Cal. Gov't Code § 815(a).

9   Because a common law claim for wrongful termination in violation

10  of public policy was judicially-created in Tameny and is not

11  codified in any statute, subsection 815(a) bars the claim against

12  public entities.   Miklosy v. Regents of Univ. of Cal., 44 Cal.

13  4th 876, 900 (2008).

14          While section 815 does not similarly limit the

15  liability of individual defendants, "a Tameny action for wrongful

16  discharge can only be asserted against an employer," thus "[a]n

17  individual who is not an employer cannot commit the tort of

18  wrongful discharge in violation of public policy."   Id.   In his

19  opposition, plaintiff nonetheless argues that defendants fail to

20  "distinguish between the individual defendants who are merely

21  supervisory or management employees of defendant County of Sutter

22  and those individual defendants who are elected officials and

23  policy-makers of County of Sutter."   (Pl.'s Opp'n at 5:10-15

24  (Docket No. 10).)   Plaintiff does not, however, cite a single

25  case suggesting that such a distinction is relevant under a

26  Tamney claim.   In fact, whether an official has policymaking

27  authority is relevant in other contexts such as 42 U.S.C. § 1983

28  when determining whether a plaintiff can bring a claim against

6

1    the municipality itself, not the individual official.  See

2    generally Goldstein v. City of Long Beach, 715 F.3d 750, 753 (9th

3    Cir. 2013).

4         Accordingly, because subsection 815(a) precludes

5    plaintiff from asserting a Tameny claim against the County and a

6    Tameny claim also cannot be brought against the individual

7    officials, the court must grant defendants' motion to dismiss

8    plaintiff's wrongful termination in violation of public policy

9    claim with prejudice.  See Airs Aromatics, LLC v. Op. Victoria's

10    Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 600 (9th Cir.

11    2014) ("A district court may dismiss a complaint without leave to

12    amend if 'amendment would be futile.'").

13       3.   Defamation

14         Although the County claims it is also immune from

15    plaintiff's defamation claim under subsection 815(a), subsection

16    815.2(a) provides that "[a] public entity is liable for injury

17    proximately caused by an act or omission of an employee of the

18    public entity within the scope of his employment if the act or

19    omission would, apart from this section, have given rise to a

20    cause of action against that employee or his personal

21    representative."  Cal. Gov't Code § 815.2(a).  Unlike a Tameny

22    claim, which can be brought only against the employer, a

23    defamation claim may be brought against an employee, and the

24    County would be liable under subsection 815.2(a) to the same

25    extent as its employee if the employee was acting in the scope of

26    his or her employment.  Accord Thomas v. City of Richmond, 9 Cal.

27    4th 1154, 1157 (1995) (recognizing that "[a] public entity, as

28    the employer, is generally liable for the torts of an employee

committed within the scope of employment if the employee is liable," but the public entity generally is not liable if the individual employee is immune); Nadel v. Regents of Univ. of Cal., 28 Cal. App. 4th 1251, 1259 (1st Dist. 1994) (applying subsection 815.2(a) to defamation claims against the public entity).

Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1369 (6th Dist. 2010) (citing Taus v. Loftus, 40 Cal. 4th 683, 720 (2007)).  The Supreme Court has held that the Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); see also McCoy v. Hearst Corp., 42 Cal. 3d 835, 860 (1986) (internal quotation marks and citation omitted) (same).  Here, plaintiff alleges that his position as CAO is the "highest position" in the County, (Compl. ¶ 17), and he concedes in his opposition that he was a public official for purposes of his defamation claim, (Pl.'s Opp'n at 6:21-22).

California Civil Code subsection 47(c)(1) also provides that a communication is privileged if it is made "without malice, to a person interested therein, [] by one who is also interested . . . ." Cal. Civ. Code § 47(c)(1).  "Insofar as the common-

1    interest privilege is concerned, malice is not inferred from the

2    communication itself." Noel v. River Hills Wilsons, Inc., 113

3    Cal. App. 4th 1363, 1370 (4th Dist. 2003).  "The malice necessary

4    to defeat a qualified privilege is actual malice which is

5    established by a showing that the publication was motivated by

6    hatred or ill will towards the plaintiff or by a showing that the

7    defendant lacked reasonable ground for belief in the truth of the

8    publication and therefore acted in reckless disregard of the

9    plaintiff's rights." Taus, 40 Cal. 4th at 721 (internal

10   quotation marks and citations omitted).

11          Here, plaintiff alleges that Black was working on the

12   County's annual independent audit and "drafted a letter to the

13   Auditors" that accused plaintiff of embezzling $2.5 million from

14   an energy project.  (Compl. ¶¶ 32-33.)  Black allegedly sent this

15   letter to the auditors, County Counsel's Office, and the District

16   Attorney and informed Sullenger of the alleged embezzlement.

17   (Id. ¶¶ 30, 34.)  Plaintiff does not dispute that Black's report

18   of alleged embezzlement comes within the common interest

19   privilege of subsection 47(c)(1).  (See Pl.'s Opp'n at 6:11-

20   7:27); see also Deaile v. Gen. Tel. Co. of Cal., 40 Cal. App. 3d

21   841, 849 (2d Dist. 1974) ("[A]n employer is privileged in

22   pursuing its own economic interests and that of its employees to

23   ascertain whether an employee has breached his responsibilities

24   of employment . . . .").

25          Plaintiff therefore must plausibly allege that Black's

26   statements about the alleged embezzlement were made with actual

27   malice in order to maintain a defamation claim as a public

28   official and overcome the common interest privilege.  "[M]alice

1   focuses upon the defendant's state of mind, not his [or her]

2   conduct.  Mere negligence in inquiry cannot constitute lack of

3   reasonable or probable cause."  Noel, 113 Cal. App. 4th at 1370

4   (internal quotations marks and citation omitted) (alterations in

5   original).

6          Although Rule 9(b) provides that "[m]alice, intent,

7   knowledge, and other conditions of a person's mind may be alleged

8   generally," Fed. R. Civ. P. 9(b), the Supreme Court recognized in

9   Iqbal that such allegations still require sufficient factual

10  support.  As the Court explained, "'generally' is a relative term

11  and, "[i]n the context of Rule 9, it is to be compared to the

12  particularity requirement applicable to fraud or mistake" and

13  "merely excuses a party from pleading [] intent under an elevated

14  pleading standard."  Iqbal, 556 U.S. at 686; see also Biro v.

15  Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015) (recognizing that

16  the Supreme Court has not "precisely articulated the effect of

17  Iqbal and Twombly on defamation cases, . . . [but] Iqbal makes

18  clear that, Rule 9(b)'s language notwithstanding, Rule 8's

19  plausibility standard applies to pleading intent").

20         Without any factual support, plaintiff alleges that

21  Black[2] "intended to harm" him and "should have recognized that

22  such publication would cause [him] harm."  (Compl. ¶ 57.)  While

23  plaintiff alleges that Black was "told by the County Counsel's

24  _____

25         [2]   Paragraph 57 actually alleges that "Defendant Brown
    intended to harm Plaintiff Arkens or should have recognized that
26  such publication would cause [plaintiff] harm."  (Compl. ¶ 57
    (emphasis added).)  Because plaintiff asserts his defamation
27  claim against only the County and Black and none of the
    defendants have the last name "Brown," the court assumes this was
28  a typographical error.

                                   10

1    Office that the allegations were not true and that he should drop

2    his issues with [plaintiff]," (id. ¶¶ 34, 35), he does not allege

3    when that statement was made or any facts from which it could be

4    inferred that Black was reckless in not simply accepting that

5    statement at face value.  To the contrary, plaintiff alleges that

6    the District Attorney convened a grand jury to investigate the

7    embezzlement accusations.  (Id. ¶¶ 35-36.)  The District Attorney

8    cannot convene a grand jury without good reason to do so.  Cf.

9    Guillory v. Superior Ct., 31 Cal. 4th 168, 174 (2003) ("The

10   prosecutor alleges the facts contained in the indictment and is

11   bound by rule 5-110 of the California Rules of Professional

12   Conduct, which prohibits prosecutors from 'institut[ing] or

13   caus[ing] to be instituted criminal charges when the member knows

14   or should know that the charges are not supported by probable

15   cause.'").  When the District Attorney thought the accusations

16   merited investigation by the grand jury, it can hardly be said

17   without more that Black was reckless as to the truth or falsity

18   of the suspected embezzlement.  Nor is there a single alleged

19   fact from which to infer that Black harbored ill will or hatred

20   toward plaintiff.

21        Accordingly, because the Complaint lacks any

22   factual content from which the court could draw the reasonable

23   inference that Black acted with actual malice, the court must

24   grant defendants' motion to dismiss his defamation claim.

25        4.   ADEA

26        The ADEA makes it unlawful to "fail or refuse to hire

27   or to discharge any individual or otherwise discriminate against

28   any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such
individual's age." 29 U.S.C. § 623(a)(1). To establish a prima
facie case under the ADEA, a plaintiff must show "he was (1) at
least forty years old, (2) performing his job satisfactorily, (3)
discharged, and (4) either replaced by substantially younger
employees with equal or inferior qualifications or discharged
under circumstances otherwise 'giving rise to an inference of age
discrimination.'" Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d
1201, 1207 (9th Cir. 2008) (citation omitted). Defendants do not
dispute that plaintiff sufficiently alleged satisfactory job
performance and, while it is surprising plaintiff neglects to
allege his age anywhere in the Complaint, he does allege that he
was over forty, (Compl. ¶¶ 17-19, 61). Defendant contends his
ADEA claim nonetheless fails because plaintiff does not plausibly
allege he was constructively discharged or replaced by someone
substantially younger or under circumstances giving rise to an
inference of age discrimination.

"[C]onstructive discharge occurs when the working
conditions deteriorate, as a result of discrimination, to the
point that they become sufficiently extraordinary and egregious
to overcome the normal motivation of a competent, diligent, and
reasonable employee to remain on the job to earn a livelihood and
to serve his or her employer." Brooks v. City of San Mateo, 229
F.3d 917, 930 (9th Cir. 2000) (internal quotation marks and
citations omitted). The plaintiff must show that conditions were
"so intolerable and discriminatory as to justify a reasonable
employee's decision to resign," which requires "some aggravating
factors, such as a continuous pattern of discriminatory

1   treatment." <u>Watson v. Nationwide Ins. Co.</u>, 823 F.2d 360, 361

2   (9th Cir. 1987) (internal quotation marks and citation omitted).

3   "Where a plaintiff fails to demonstrate the severe or pervasive

4   harassment necessary to support a hostile work environment claim,

5   it will be impossible for her to meet the higher standard of

6   constructive discharge." <u>Brooks</u>, 229 F.3d at 930.  The Ninth

7   Circuit sets the "bar high for a claim of constructive discharge

8   because federal antidiscrimination policies are better served

9   when the employee and employer attack discrimination within their

10  existing employment relationship, rather than when the employee

11  walks away and then later litigates whether his employment

12  situation was intolerable." <u>Poland v. Chertoff</u>, 494 F.3d 1174,

13  1184 (9th Cir. 2007).

14       Although plaintiff appears to base his ADEA claim on

15  his alleged constructive discharge, he does not allege that he

16  resigned from his employment with the County.  According to

17  plaintiff's Complaint, the Board "request[ed] his resignation"

18  and told him that, "if he did not immediately accept the County's

19  Offer to resign, he would be placed on Administrative leave."

20  (Compl. ¶ 20.)  Plaintiff alleges he was subsequently placed on

21  administrative leave in October 2015, not that he resigned.  (<u>See</u>

22  <u>id.</u> ¶ 46 ("In September 2015, <u>prior to Arkens being placed on</u>

23  <u>administrative leave on October 15, 2015</u> Arkens started having

24  frequent panic attacks and felt very awkward because of the daily

25  treatment by his superiors and County Officers.  Arkens

26  thereafter filed a Workers Compensation Claim, sought medical

27  attention and was placed on stress leave.  <u>One Month later Arkens</u>

28  <u>was placed on administrative leave</u>.") (emphasis added).)

1    Plaintiff also does not allege how long he remained on
2    administrative leave or whether it was paid or unpaid, which are
3    necessary to determine whether he plausibly alleges constructive
4    termination.  Compare, e.g., Herzog v. Banner Churchill Cmty.
5    Hosp., No. 3:09-CV-567 ECR RAM, 2010 WL 1418867, at *4 (D. Nev.
6    Apr. 7, 2010) ("The act of placing Plaintiff on paid
7    administrative leave, alone, is insufficient to support a charge
8    of constructive discharge."), and Stearns-Groseclose v. Chelan
9    Cty. Sheriff's Dep't, No. 04-CV-0312 RHW, 2006 WL 195788, at *17
10   (E.D. Wash. Jan. 17, 2006) ("The Court finds that a reasonable
11   person in Plaintiff's position, on paid administrative leave
12   pending the results of an internal investigation, would not be
13   forced to resign, just as Plaintiff did not resign."), with
14   White v. Honeywell, Inc., 141 F.3d 1270, 1279 (8th Cir. 1998)
15   ("We are not prepared to say that 'quit' is the magic word in a
16   constructive discharge instruction.  A person who has suffered a
17   forced unpaid medical leave of absence, from which she is unable
18   to return and which resulted from objectively intolerable working
19   conditions, is in no better position than one who was forced to
20   quit as a result of objectively intolerable conditions."), and
21   Violan v. On Lok Senior Health Servs., No. 12-CV-05739 WHO, 2013
22   WL 6907153, at *13 (N.D. Cal. Dec. 31, 2013) ("Courts have denied
23   summary judgment on constructive termination claims where the
24   plaintiff has not formally resigned and is on an extended medical
25   leave of absence.").

26       Moreover, while plaintiff's Complaint and opposition
27   brief are far from a model of clarity, the Complaint also seems
28   to allege that plaintiff's contract automatically renewed for

1   another three years and thus the Board's decision not to renew

2   the contract was essentially a decision to terminate him.[3]  The

3   inability to decipher whether plaintiff is pursuing an ADEA claim

4   based on his constructive discharge, the Board's termination of

5   him after his contract allegedly renewed, the Board's decision

6   not to renew his contract, or an entirely different theory of his

7   discharge falls short of giving defendants notice of the claim it

8   must defend against.  See Cafasso, U.S. ex rel. v. Gen. Dynamics

9   C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) ("[C]onfusing

10   complaints . . . impose unfair burdens on litigants and judges. .

11   . . Defendants are . . . put at risk that . . . plaintiffs will

12   surprise them with something new at trial which they reasonably

13   did not understand to be in the case at all, and that res

14   judicata effects of settlement or judgment will be different from

15   what they reasonably expected.") (internal quotation marks and

16   citation omitted); Salazar v. County of Orange, 564 F. App'x 322,

17   322 (9th Cir. 2014) ("A complaint should fully set[ ] forth who

18   is being sued, for what relief, and on what theory, with enough

19   _____

20        [3]     Plaintiff alleges that his employment contract with the
County provided that it would automatically renew for an

21   additional three years unless the County gave him notice ninety
days prior to termination of the contract and thus the October

22   15, 2015 notice of non-renewal was several days past this
deadline.  (Compl. ¶ 21.)  Plaintiff attached his employment

23   contract with the County as an exhibit to his Complaint and it
provides for 120 days of advance notice of intent to terminate,

24   not ninety.  (See id. Ex. A ("At the end of the three-year term,
this agreement shall automatically renew for an additional term

25   of three years unless the Board, by 120-days advanced written
notice, notifies Employee of its intent to terminate the

26   agreement."); see United States v. Ritchie, 342 F.3d 903, 908

27   (9th Cir. 2003) (explaining that a court may consider documents
attached to the complaint when deciding a motion to dismiss).

28

1  detail to guide discovery." (internal quotation marks and

2  citation omitted) (alteration in original)).

3        Plaintiff also alleges only that his replacement was

4  "younger" than him, but does not allege any facts from which the

5  court could infer she was substantially younger than him.

6  (Compl. ¶ 42.)   In fact, plaintiff alleges that his replacement

7  had commented that plaintiff "wasn't as old as her parents," (id.

8  ¶ 44), which suggests that the age difference between the two of

9  them might not have been substantial.

10        Nor does he plausibly allege that the Board made a

11  decision under circumstances giving rise to an inference of age

12  discrimination.   Plaintiff merely alleges that "several"

13  supervisors made "comments" about his age and "commented out loud

14  'when [he] would retire.'"   (Id. ¶ 42.)   While he alleges that

15  Flores was aware of plaintiff's age before plaintiff was hired

16  and had inquired about when plaintiff planned to retire, (id. ¶

17  43), it is not plausible to infer that Flores discriminated

18  against plaintiff on the basis of his age only three years after

19  deciding to hire him despite his age.   Plaintiff also alleges

20  that a friend of Flores mentioned to Flores that plaintiff "was

21  old."   (Id. ¶ 44.)   A mere comment that a person is "old" does

22  not raise the inference of discrimination against that person

23  because of his or her age.   Not only is the context of this

24  statement unknown, "old" is a meaningless and relative term.   To

25  the twelve year old, an eighteen year old may be "old," but to

26  the seventy year old, a sixty-five year old may not be "old" at

27  all.

28        Accordingly, because the "discharge" giving rise to

16

1  plaintiff's ADEA claim remains unclear and plaintiff fails to

2  allege sufficient facts to plausibly support his conclusory

3  allegation that his age was a motivating factor in any decision,

4  the court must grant plaintiff's motion to dismiss plaintiff's

5  ADEA claim.

6        5.   <u>Federal and State Retaliation</u>

7        In his fourth claim for relief, plaintiff generally

8  alleges that he participated in "protected activity" when he did

9  not comply with requests made against County policy and was

10 "constructively terminated" for participating in that protected

11 activity.  (<u>Id.</u> ¶¶ 64-67.)  Plaintiff does not, however, identify

12 the statutory or common law federal and state rights giving rise

13 to his retaliation claim.  When numerous federal and state

14 statutes prohibit retaliation for engaging in an activity

15 protected by the particular statute, plaintiff cannot shift the

16 burden to the court or defendants to determine which statute or

17 common law right, if any, gives rise to his claim.  Moreover, the

18 only factual allegations in the Complaint involving plaintiff's

19 refusal to comply with requests made against County policy were

20 requests Sullenger allegedly made for certain health and

21 retirement benefits between March 2013 and July 2014.  Plaintiff

22 does not include any factual allegations giving rise to the

23 plausible inference that the Board considered those incidents in

24 making its October 15, 2015 decision not to renew his contract.

25 Accordingly, because plaintiff has failed to comply with even the

26 liberal notice requirements of Rule 8, the court must grant

27 defendants' motion to dismiss plaintiff's generic claim for

28 "federal and state retaliation."

1   6.   Negligent and Intentional Infliction of Emotional

2       Distress

3       "California's Workers' Compensation Act ["WCA"]

4   provides an employee's exclusive remedy against his or her

5   employer for injuries arising out of and in the course of

6   employment." Melendrez v. Ameron Int'l Corp., 240 Cal. App. 4th

7   632, 638 (2d Dist. 2015) (internal quotation marks and citations

8   omitted). "[A]n employee's emotional distress injuries are

9   subsumed under the exclusive remedy provisions of workers'

10  compensation" unless the employer's conduct (1) "contravenes

11  fundamental public policy" or (2) "exceeds the risks inherent in

12  the employment relationship." Livitsanos v. Superior Ct., 2 Cal.

13  4th 744, 754 (1992) (citations omitted).

14      "The exception for conduct that 'contravenes

15  fundamental public policy' is aimed at permitting a Tameny action

16  to proceed despite the workers' compensation exclusive remedy

17  rule," not a claim for intentional infliction of emotional

18  distress. Miklosy, 44 Cal. 4th at 902-02; see also Thomas v.

19  Starz Entm't LLC, No. 2:15-CV-09239 CAS MRW, 2016 WL 844799, at

20  *8 (C.D. Cal. Feb. 29, 2016) (explaining that the "'fundamental

21  public policy' exception is of exceedingly limited import" after

22  the Miklosy court limited it to Tameny claims); see also Charles

23  J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800,

24  822 (2001) (recognizing that the public policy exception has also

25  been applied to wrongful termination under California's Fair

26  Employment and Housing Act and statutory whistleblower claims).

27      Under the second exception, an employer's conduct

28  may exceed the risks inherent in the employment relationship when

18

1  the conduct has "a 'questionable' relationship to the

2  employment," the injury "did not occur while the employee was

3  performing service incidental to the employment and [] would not

4  be viewed as a risk of the employment," or the employer "stepped

5  out of [its] proper role[]."  Cole v. Fair Oaks Fire Prot. Dist.,

6  43 Cal. 3d 148, 161 (1987).  In contrast, "when the misconduct

7  attributed to the employer is actions which are a normal part of

8  the employment relationship, such as demotions, promotions,

9  criticism of work practices, and frictions in negotiations as to

10 grievances, an employee suffering emotional distress causing

11 disability may not avoid the exclusive remedy provisions of the

12 Labor Code by characterizing the employer's decisions as

13 manifestly unfair, outrageous, harrassment [sic], or intended to

14 cause emotional disturbance resulting in disability."  Id. at

15 160; see also Charles J. Vacanti, M.D., Inc., 24 Cal. 4th at 821

16 ("[T]ermination, a known risk of any employment relationship,

17 does not, by itself, insulate a cause of action from the

18 exclusive remedy provisions.").

19        The conduct plaintiff alleges gives rise to his

20 negligent and intentional infliction of emotional distress claims

21 is not entirely clear because his Complaint merely incorporates

22 all the factual allegations preceding those claims.  (See Compl.

23 ¶¶ 68, 73.)  Nor does plaintiff attempt to identify the conduct

24 underlying these claims in his opposition.  Nonetheless, all of

25 the conduct alleged in plaintiff's Complaint occurred during and

26 because of his employment with the County and was a "normal part

27 of the employment relationship."  Plaintiff alleges only that the

28 Board did not renew his employment contract and placed him on

1    administrative leave, (id. ¶¶ 20, 38), some of the Supervisors

2    were hostile toward plaintiff or avoided interacting with him,

3    (id. ¶¶ 23-26, 29-30, 37), the Board delayed his annual

4    performance evaluation, and the County Auditor reported plaintiff

5    had allegedly embezzled money from a County project, (id. ¶¶ 32-

6    34).

7         Although plaintiff alleges some of the defendants acted

8    intentionally and for a wrongful purpose, including

9    discriminating against him based on his age, an employee cannot

10   "avoid the exclusive remedy provisions of the Labor Code by

11   characterizing the employer's decisions as manifestly unfair,

12   outrageous, harrassment [sic], or intended to cause emotional

13   disturbance."  Cole, 43 Cal. 3d at 160.  "[T]he critical issue is

14   whether the alleged acts, bereft of their motivation, can ever be

15   viewed as a normal aspect of the employer relationship."  Charles

16   J. Vacanti, M.D., Inc., 24 Cal. 4th at 822; see also Cole, 43

17   Cal. 3d at 160  ("If characterization of conduct normally

18   occurring in the workplace as unfair or outrageous were

19   sufficient to avoid the exclusive remedy provisions of the Labor

20   Code, the exception would permit the employee to allege a cause

21   of action in every case where he suffered mental disability

22   merely by alleging an ulterior purpose of causing injury."); see

23   also Jones v. Dep't of Corr. & Rehab., 152 Cal. App. 4th 1367,

24   1382 (4th Dist. 2007) ("Even if the discriminatory conduct

25   [plaintiff] complained about 'may be characterized as

26   intentional, unfair or outrageous, it is nevertheless covered by

27   the workers' compensation exclusivity provisions.'").

28        Accordingly, because plaintiff's exclusive remedy for

1   the emotional distress he allegedly suffered from defendants'

2   conduct lies under the WCA, the court must grant defendants'

3   motion to dismiss plaintiff's negligent and intentional

4   infliction of emotional distress claims with prejudice.

5           The court will also strike plaintiff's requests for

6   punitive damages against the County and on his ADEA claim, which

7   plaintiff concedes are not available.  (Pl.'s Opp'n at 12:20-24,

8   13:1-3); see also Cal. Gov't Code § 818 ("Notwithstanding any

9   other provision of law, a public entity is not liable for damages

10  awarded under Section 3294 of the Civil Code or other damages

11  imposed primarily for the sake of example and by way of punishing

12  the defendant."); Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d

13  1051, 1059 (9th Cir. 2009) ("Compensatory damages for pain and

14  suffering and punitive damages are not available under the ADEA .

15  . . .").

16          IT IS THEREFORE ORDERED that defendants' motion to

17  dismiss plaintiff's wrongful termination in violation of public

18  policy, negligent infliction of emotional distress, and

19  intentional infliction of emotional distress claims be, and the

20  same hereby is, GRANTED and those claims are DISMISSED WITH

21  PREJUDICE; and defendants' motion to dismiss plaintiff's

22  defamation, ADEA, and "federal and state retaliation" claims be,

23  and the same hereby is, GRANTED and those claims are DISMISSED

24  WITHOUT PREJUDICE.

25          IT IS FURTHER ORDERED that plaintiff's requests for

26  punitive damages against the County and on his ADEA claim be, and

27  the same hereby are, stricken from the Complaint.

28          Plaintiff has twenty days from the date this Order is

signed to file an amended complaint, if he can do so consistent

with this Order.

Dated:   July 25, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE