1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10
                                   ----oo0oo----
11

12   JAMES ARKENS,                        CIV. NO. 2:16-951 WBS KJN

13              Plaintiff,                 MEMORANDUM AND ORDER RE: MOTION
                                           TO DISMISS FIRST AMENDED
14        v.                               COMPLAINT

15   COUNTY OF SUTTER; RON
     SULLENGER, JIM WHITEAKER, DAN
16   FLORES, and NATE BLACK as
     individual citizens and in
17   their official capacities as
     Sutter County employees; and
18   DOES 1 through 50,

19              Defendants.

20

21                                 ----oo0oo----

22        Plaintiff James Arkens filed this case against--(1) the

23   County of Sutter ("the County"); (2) Sutter County Supervisors

24   Ron Sullenger, Jim Whiteaker,[1] and Dan Flores; and (3) Sutter

25   ────────────────
              [1]    Plaintiff's first amended complaint spells Mr.
26   Whiteaker's last name "Whitaker" on multiple occasions.  (See,
     e.g., First Am. Compl. ¶¶ 13, 30 (Docket No. 16).)  The correct
27   spelling of Mr. Whiteaker's last name is "Whiteaker."  See Jim
     Whiteaker Bio,
28   https://www.co.sutter.ca.us/doc/government/bos/bios/bos_whiteaker

                                        1

1  County Auditor Nate Black (collectively "defendants")--alleging

2  wrongful discharge, defamation, age discrimination, and

3  retaliation in violation of state and federal law.  (First Am.

4  Compl. ("FAC") at 13-17 (Docket No. 16).)  Defendants now move to

5  dismiss plaintiff's first amended complaint pursuant to Federal

6  Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss

7  ("Defs.' Mot.") (Docket No. 18).)

8  I.   Factual and Procedural History

9         Plaintiff began to work for the County as its Chief

10 Administrative Officer on February 4, 2013.  (FAC ¶ 17.)

11        Plaintiff alleges that in March 2013, January 2014, and

12 July 2014, he declined to provide certain health and retirement

13 benefits to Supervisor Sullenger on behalf of the County because

14 doing so was illegal.  (Id. ¶¶ 23-27.)  During the July 2014

15 exchange between plaintiff and Sullenger, Sullenger allegedly

16 asked plaintiff to fire a female employee who had explained the

17 health insurance enrollment process to Sullenger.  (Id. ¶ 26.)

18 Sullenger allegedly stated, "[F]ire her, she doesn't know what

19 she's doing and she's one of the b-h's that filed charges against

20 me for looking at her ass."  (Id.)  Plaintiff refused.  (Id. ¶

21 27.)  Plaintiff alleges that after these events, his interactions

22 with Sullenger were "reduced to almost zero and were extremely

23 hostile."  (Id. ¶ 24.)

24        During plaintiff's employment at the County, Supervisor

25 Flores and other County staff allegedly made comments about

26 plaintiff's age. (Id. ¶ 52.)  Flores allegedly called plaintiff

27 _____

28 (last visited Sept. 25, 2016).  The court will use "Whiteaker" in
   this Order.

1    "old" and asked him "when [he] would retire."  (Id. ¶¶ 52, 54.)

2    Plaintiff is "over the age of sixty."  (Id. ¶ 51.)

3            In April 2015, County Auditor Black met with plaintiff

4    concerning the County's annual independent audit.  (Id. ¶ 38.)

5    Black told plaintiff that he had drafted a letter concerning

6    plaintiff's involvement in the Chevron Energy Project ("the

7    Project").  (Id. ¶ 37-38.)  The County Board of Supervisors ("the

8    Board") had approved the Project in February 2014 after a public

9    hearing and approval from the Sutter County Counsel's Office.

10   (Id. ¶¶ 33-34.)  Black's letter accused plaintiff of embezzling

11   $2.5 million from the Project.  (Id. ¶ 39.)  Black allegedly sent

12   the letter to the County Counsel's Office, the Sutter County

13   District Attorney, the independent auditor working on the County

14   audit, and the media.  (Id. ¶¶ 39-40, 43.)

15           Plaintiff alleges on information and belief that before

16   Black sent out the letter, the County Counsel's Office had

17   informed Black that "the allegations [against plaintiff] were not

18   true and that he should drop his issues with [plaintiff]."  (Id.

19   ¶ 42.)

20           On September 29, 2015, the Board informed plaintiff

21   that the County would not be renewing his employment contract and

22   that if he did not resign, the County would place him on

23   administrative leave.  (Id. ¶ 20.)  Plaintiff did not resign at

24   that time and the Board placed him on administrative leave on

25   October 15, 2015.  (Id. ¶ 58.)

26           In December 2015, the District Attorney convened a

27   grand jury to investigate the charges against plaintiff.  (Id. ¶

28   45.)  The grand jury subpoenaed plaintiff to appear in January

                                    3

1   2016.  (Id. ¶ 46.)

2           Plaintiff filed a complaint against defendants on May

3   5, 2016, alleging wrongful discharge in violation of public

4   policy, defamation, age discrimination, unlawful retaliation, and

5   intentional and negligent infliction of emotional distress.

6   (Compl. at 10-12 (Docket No. 1).)  On July 25, 2016, this court

7   dismissed plaintiff's wrongful discharge and emotional distress

8   claims with prejudice, and his other claims without prejudice

9   ("July 25 Order").  (July 25, 2016 Order ("July 25 Order") at 21

10  (Docket No. 15).)

11          Plaintiff filed an amended complaint on August 12,

12  2016, asserting claims for: (1) "constructive discharge" against

13  all defendants[2]; (2) defamation against the County and Black; (3)

14  discrimination in violation of the Age Discrimination in

15  Employment Act ("ADEA"), 29 U.S.C. §621, against the County,

16  Sullenger, Whiteaker,[3] and Flores; and (4) "federal and state

17  retaliation," Cal. Gov. Code § 12900 et. seq. and Cal. Lab. Code

18  § 1102.5, against all defendants.  (FAC at 13-17.)  Presently

19  ───────────────────

20      [2]   Plaintiff sues the individual defendants in both their
    individual and official capacities.  (See FAC ¶¶ 10-15.)  As in
21  the July 25 Order, the court will treat plaintiff's claims
    against the individual defendants as against them in their
22  individual capacities, as his official capacity claims are
    duplicative of his claims against the County.  See Will v.
23  Michigan Dep't of State Police, 491 U.S. 58, 89 (1989) ("An
    official-capacity suit . . . generally represent[s] only another
24  way of pleading an action against an entity of which an officer
    is an agent." (internal quotation marks and citations omitted)).
25

26      [3]   Whiteaker's role in this case is not as clear as the
    other defendants'.  Plaintiff's dispute with Whiteaker appears to
27  be that he partook in the County's decision to not renew his
    contract and fabricated employment-related charges against him to
28  justify the County's decision.  (See FAC ¶¶ 30, 49-50.)

                                  4

1 before the court is defendants' motion to dismiss plaintiff's

2 first amended complaint.  (Defs.' Mot.)

3 II.  Legal Standard

4      On a motion to dismiss for failure to state a claim

5 under Rule 12(b)(6), the court must accept the allegations in the

6 pleadings as true and draw all reasonable inferences in favor of

7 the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

8 overruled on other grounds by Davis v. Scherer, 468 U.S. 183

9 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a

10 motion to dismiss, a plaintiff must plead "only enough facts to

11 state a claim to relief that is plausible on its face."  Bell

12 Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

13      "While a complaint attacked by a Rule 12(b)(6) motion

14 to dismiss does not need detailed factual allegations, a

15 plaintiff's obligation to provide the 'grounds' of his

16 'entitle[ment] to relief' requires more than labels and

17 conclusions . . . ."  Twombly, 550 U.S. at 555 (citation

18 omitted).  "Threadbare recitals of the elements of a cause of

19 action, supported by mere conclusory statements, do not suffice,"

20 and "the tenet that a court must accept as true all of the

21 allegations contained in a complaint is inapplicable to legal

22 conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

23      The "plausibility" standard, "asks for more than a

24 sheer possibility that a defendant has acted unlawfully," and

25 where a plaintiff pleads facts that are "merely consistent with a

26 defendant's liability," the facts "stop[] short of the line

27 between possibility and plausibility."  Id. (quoting Twombly, 550

28 U.S. at 557).  "[D]etermining whether a complaint states a

1  plausible claim is context-specific, requiring the reviewing

2  court to draw on its experience and common sense." Id. at 663-64

3  (citing Twombly, 550 U.S. at 556).

4  III. Analysis

5       A.   Plaintiff's "Constructive Discharge" Claim is Not a

6            Plausible Claim for Relief

7            Plaintiff titles his first cause of action

8  "constructive discharge." (FAC at 13.) He states in his

9  Opposition that the title "constructive discharge" is a misprint,

10 and that he meant for the title to read "wrongful discharge."

11 (Pl.'s Opp'n at 3 (Docket No. 19).)

12           In either case, plaintiff has failed to state a

13 plausible claim for relief. "Standing alone, constructive

14 discharge is neither a tort nor a breach of contract, but a

15 doctrine that transforms what is ostensibly a resignation into a

16 firing." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251

17 (1994). "Even after establishing constructive discharge, an

18 employee must independently prove a breach of contract or tort in

19 connection with employment termination in order to obtain damages

20 for wrongful discharge." Id. Plaintiff is not entitled to

21 relief merely for "constructive discharge."

22           With respect to "wrongful discharge," the court assumes

23 that plaintiff is referring to the tort of wrongful discharge in

24 violation of public policy under California law--that is, a

25 Tameny claim.[4]  See Tameny v. Atl. Richfield Co., 27 Cal. 3d 167,

26 _____

27      [4]   To the extent plaintiff meant for "wrongful discharge"
   to refer to a different claim, that claim fails under Federal
   Rule of Civil Procedure 8 for vagueness. See Lee v. City of Los
28 Angeles, 250 F.3d 668, 679 (9th Cir. 2001) (a complaint must

                                    6

1  170 (1980).  The court dismissed plaintiff's <u>Tameny</u> claim with

2  prejudice as to all defendants in the July 25 Order.  (July 25

3  Order at 7.)  Accordingly, for the same reasons, the court will

4  dismiss plaintiff's first cause of action.

5           B.   <u>Plaintiff Fails to State a Plausible Claim for</u>

6                <u>Defamation</u>

7           Plaintiff brings a defamation claim against the County

8  and Black.  (FAC at 14.)  Under <u>N.Y. Times Co. v. Sullivan</u>, 376

9  U.S. 254 (1964), "a public official [cannot] recover[] damages

10 for a defamatory falsehood relating to his official conduct

11 unless he proves that the statement was made with 'actual

12 malice'--that is, with knowledge that it was false or with

13 reckless disregard of whether it was false or not."  <u>Id.</u> at 279-

14 80.  The court dismissed plaintiff's original defamation claim in

15 the July 25 Order because plaintiff failed to plausibly allege,

16 <u>inter alia</u>, 'actual malice' on Black's part.  (<u>See</u> July 25 Order

17 at 11.)

18          Plaintiff's amended complaint does nothing to remedy

19 that defect.  The only new fact that plaintiff alleges relevant

20 to his defamation claim is that the County Board and Counsel's

21 Office approved the Project after a public hearing.  As the court

22 explained in the July 25 Order, even if the County informed Black

23 that his accusations were false, that alone does not indicate

24 that Black, the County Auditor, "was reckless in not simply

25 accepting [the County's] statement at face value."  (<u>Id.</u>)

26 Nothing in plaintiff's amended complaint undermines that

27 _____

28 "give the defendant fair notice of what the plaintiff's claim is
   and the grounds upon which it rests").

1    rationale.

2            Moreover, plaintiff's amended complaint does nothing to

3    address the court's inference that Black's accusations were not

4    unreasonable, much less reckless, in light of the District

5    Attorney's decision to convene a grand jury to investigate the

6    accusations.  (See id. (citing Guillory v. Superior Ct., 31 Cal.

7    4th 168, 174 (2003), which noted that under "the California Rules

8    of Professional Conduct, [prosecutors are prohibited from]

9    'institut[ing] or caus[ing] to be instituted criminal charges

10   when [they] know[] or should know that the charges are not

11   supported by probable cause.'").)  If anything, the amended

12   complaint further confirms the reasonableness of Black's

13   accusations by indicating that the County Auditor who preceded

14   Black also viewed plaintiff's involvement in the Project with

15   suspicion.  (FAC ¶ 35 (alleging that former County Auditor

16   refused plaintiff's request to "place the project on the County

17   books.").)

18           Because plaintiff has failed to remedy the defects

19   noted by the court in the July 25 Order, the court will dismiss

20   plaintiff's amended defamation claim.[5]

21   ─────────────
          [5]    Plaintiff does allege a new incident between Black and
22   plaintiff that suggests ill will on Black's part.  (See FAC ¶¶
     36-37 (alleging that one month before Black published the
23   accusations, plaintiff refused to support a proposal by Black to
     convert the County Auditor position into an unelected position).)
24   That allegation may defeat defendants' common interest privilege
     defense, which requires an absence of statutory malice, defined
25   as "ill will" or "lack[ of] reasonable grounds for belief in the
     truth of the publication," Sanborn v. Chronicle Pub. Co., 18 Cal.
26   3d 406, 413 (1976) (internal citation omitted).  Even if the
     allegation defeats defendants' common interest defense, however,
27   it cannot save plaintiff's defamation claim because plaintiff has
     failed to allege 'actual malice' under N.Y. Times.
28

1      C.    <u>Plaintiff Fails to State a Plausible Claim for Age</u>

2              <u>Discrimination Under the ADEA</u>

3         The ADEA makes it unlawful to "to discharge any

4 individual or otherwise discriminate against any individual . . .

5 because of such individual's age."  29 U.S.C. § 623(a)(1).  To

6 state a prima facie case of age discrimination under the ADEA,

7 plaintiff must plead "that he was (1) at least forty years old,

8 (2) performing his job satisfactorily, (3) discharged, and (4)

9 either replaced by substantially younger employees with equal or

10 inferior qualifications or discharged under circumstances

11 otherwise giving rise to an inference of age discrimination."

12 <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207 (9th Cir.

13 2008) (internal quotation marks and citation omitted).  In lieu

14 of alleging that the County discharged him, plaintiff may allege

15 that it constructively discharged him.  See <u>Brooks v. City of San</u>

16 <u>Mateo</u>, 229 F.3d 917, 930 (9th Cir. 2000).

17         Like his amended defamation claim, plaintiff's amended

18 ADEA claim fails to sufficiently address the deficiencies noted

19 in the July 25 Order.  Plaintiff argues that the County

20 discharged or constructively discharged him when it told him that

21 "if he did not immediately accept the County's Offer to resign,

22 he would be placed on Administrative leave."  (FAC ¶ 20.)  That

23 statement is not a discharge.  With respect to whether it was a

24 constructive discharge, the court noted in the July 25 Order that

25 plaintiff would need to address the following questions in order

26 to state a claim of constructive discharge: (1) how long the

27 leave was for, (2) whether the leave was paid, (3) whether

28 plaintiff could return from the leave, and (4) whether plaintiff

9

1    resigned.  (July 25 Order at 14.)  Plaintiff's amended complaint

2    answers none of these questions.

3         Plaintiff also claimed at oral argument that the Board

4    discharged him when it provided him late notice of nonrenewal of

5    his employment contract and did not retain him after the contract

6    expired.  Plaintiff's contract with the County states that his

7    employment was to run from February 4, 2013 to February 3, 2016,

8    at which time the contract would "automatically renew for an

9    additional term of three years unless the Board, by 120-days

10   advanced written notice, notifies Employee of its intent to

11   terminate the agreement."  (Compl. Ex. A, Employment Agreement at

12   1 (Docket No. 1-2).)

13        Like his original complaint, plaintiff's amended

14   complaint does not allege that the Board failed to provide him

15   written notice prior to the specified deadline.  Contrarily, the

16   amended complaint alleges that the Board notified plaintiff--the

17   court assumes orally--on September 29, 2015 that the Board would

18   not be renewing plaintiff's employment contract.[6]  (FAC ¶ 20-22.)

19   The amended complaint states that September 29, 2015 "was several

20   days past" the notice of nonrenewal deadline.  (Id. ¶ 21.)  That

21   date is in fact 127 days before the end of plaintiff's contract,

22   ───────────────────────

23        [6]    The amended complaint states, multiple times, that the
     County first gave plaintiff notice of nonrenewal on September 29,
24   2015.  (FAC ¶¶ 20-22.)  It also states, multiple times, that the
     Board first gave him notice on October 15, 2015.  (Id. ¶¶ 4, 60,
25   82.)  It is difficult to tell which of the two dates plaintiff
     first received notice on.  Accordingly, plaintiff's claim of
26   discharge based on nonrenewal fails for the separate reason that
     it does not give defendants "fair notice of what the . . . claim
27   is and the grounds upon which it rests."  See Lee, 250 F.3d at
     679.

28
                                  10

1 and therefore seven days ahead of the deadline.  Accordingly,

2 plaintiff has not stated a claim that the Board discharged him by

3 letting him go after his contract had automatically renewed.

4       Because plaintiff's amended complaint fails to remedy

5 the defects noted in the July 25 Order with respect to discharge

6 and constructive discharge, the court need not address whether

7 the complaint sufficiently alleges the other elements of a prima

8 facie ADEA claim.  Accordingly, the court will dismiss

9 plaintiff's ADEA claim.

10     D.   <u>Plaintiff Fails to State a Plausible Claim for Unlawful</u>

11        <u>Retaliation</u>

12       Plaintiff alleges that defendants retaliated against

13 him in violation of "federal and state" law when they placed him

14 on administrative leave and refused to renew his contract.  (<u>Id.</u>

15 at 17.)  Defendants took adverse action against him, according to

16 plaintiff, in part because he refused to comply with Sullenger's

17 illegal demands for health benefits and to terminate a female

18 employee based on her gender.  (<u>Id.</u>)

19       As an initial matter, plaintiff still has not cited a

20 federal law that defendants allegedly violated by retaliating

21 against him.  Accordingly, for the reasons previously discussed,

22 the court must dismiss plaintiff's federal retaliation claim.

23 See <u>Salazar v. County of Orange</u>, 564 F. App'x 322, 322 (9th Cir.

24 2014) ("A complaint should fully set[] forth who is being sued,

25 for what relief, and on what theory . . . ." (internal quotation

26 marks and citation omitted)).

27       With respect to his state retaliation claim, plaintiff

28 has failed to address the court's July 25 holding that there is

1  an absence of "any factual allegations" indicating that the Board

2  considered the Sullenger incidents in taking adverse action

3  against him.  (See July 25 Order at 17.)

4       In the amended complaint, plaintiff alleges that

5  defendants violated California Government Code section 12900 et.

6  seq. and California Labor Code section 1102.5 when they placed

7  him on administrative leave.  (FAC at 17.)  California Government

8  Code section 12940(h) prohibits employers from retaliating

9  against employees who "oppose[] any practices forbidden under

10 [the California Fair Employment and Housing Act]."  Cal. Gov.

11 Code § 12940(h).  The California Fair Employment and Housing Act

12 ("FEHA") prohibits employers from discharging employees based on

13 their "sex" or "gender."  Id. § 12940(a).  California Labor Code

14 section 1102.5 prohibits employers from retaliating against

15 employees who "refus[e] to participate in an activity that would

16 result in a violation of state or federal statute."  Cal. Lab.

17 Code § 1102.5.

18      Both statutes require proving "a causal link" between

19 engagement in the protected activity and the adverse action.  See

20 Washington v. California City Correction Ctr., 871 F. Supp. 2d

21 1010, 1027 (E.D. Cal. 2012) (holding that there must be "a causal

22 link between the retaliatory animus and the adverse action" under

23 California Government Code section 12940(h)); Edgerly v. City of

24 Oakland, 211 Cal. App. 4th 1191, 1199 (2012), as modified (Dec.

25 13, 2012) ("To establish a prima facie case [under California

26 Labor Code section 1102.5(c)], a plaintiff must show that he or

27 she was subjected to adverse employment action after engaging in

28 protected activity and that there was a causal connection between

12

1  the two.").

2          The court dismissed plaintiff's retaliation claims in

3  the July 25 Order in part[7] because "[p]laintiff [did] not include

4  any factual allegations giving rise to the plausible inference

5  that the Board considered [the Sullenger] incidents" in taking

6  adverse action against him.  (July 25 Order at 17.)  Relevant to

7  the court's ruling there was the fact that the Sullenger

8  incidents took place in March 2013 and July 2014, while the

9  decision to place plaintiff on leave and not renew his contract

10  took place in September or October 2015--at least fourteen months

11  after the incidents.  (Id.)

12          Plaintiff has not alleged any new facts supporting a

13  plausible inference that the County took adverse action against

14  him due to the Sullenger incidents.  Plaintiff states in his

15  Opposition that his issues with Sullenger were "ongoing" and that

16  the "instances cited in the complaint are . . . not intended [to

17  be] exhaustive of the protected activity in which Plaintiff

18  participated and alleges were considered when the defendants

19  retaliated against him."  (Pl.'s Opp'n at 13-14.)  Contrary to

20  this explanation, however, Federal Rule of Civil Procedure 8

21  requires plaintiff to state his factual allegations in the

22  complaint, not have defendants and the court guess at them.  See

23  Iqbal, 556 U.S. at 678 ("[A] complaint must contain sufficient

24  factual matter, accepted as true, to state a claim to relief . .

25  . . A claim has facial plausibility when the plaintiff pleads

26  _____

27          [7]    The court's other stated reason for dismissing
   plaintiff's retaliation claims was that plaintiff did not cite
   any specific statutes that defendants allegedly violated.  (July

28  25 Order at 17.)

13

1   factual content that allows the court to draw the reasonable

2   inference that the defendant is liable for the misconduct

3   alleged." (emphases added)).

4        Because plaintiff's amended complaint fails to address

5   the court's concern with respect to causation, the court will

6   dismiss plaintiff's state retaliation claim.

7        D.   Dismissal With Prejudice

8        Defendants request that the court dismiss each of

9   plaintiff's claims with prejudice and without leave to amend.

10  (Defs.' Mot., Mem. at 23 (Docket No. 18-1).)  "[A] district court

11  need not grant leave to amend where the amendment: (1) prejudices

12  the opposing party; (2) is sought in bad faith; (3) produces an

13  undue delay in litigation; or (4) is futile." AmerisourceBergen

14  Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006);

15  see also Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999)

16  (holding the same).

17       The court has already dismissed plaintiff's Tameny

18  claim with prejudice.  (July 25 Order at 21.)  With respect to

19  plaintiff's other claims, plaintiff has failed to allege facts

20  that so much as address, much less remedy, the concerns expressly

21  noted in the court's July 25 Order despite having ample

22  opportunity to do so.  In the instance of plaintiff's federal

23  retaliation claim, the neglected remedy was as simple as citing a

24  federal statute.  To give plaintiff leave to amend his complaint

25  a second time after his first amended complaint failed to even

26  address the issues raised by the court would constitute undue

27  delay and prejudice to defendants.  Moreover, plaintiff indicated

28  at oral argument that the reason he did not plead curative facts

14

1   was because none exist.  Accordingly, the court will dismiss

2   plaintiff's entire complaint with prejudice.  <u>See</u> <u>Bonin v.</u>

3   <u>Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of

4   amendment can, by itself, justify the denial of a motion for

5   leave to amend.").

6         IT IS THEREFORE ORDERED that defendants' motion to

7   dismiss plaintiff's first amended complaint be, and the same

8   hereby is, GRANTED.  Plaintiff's entire complaint is DISMISSED

9   WITH PREJUDICE.

10  Dated:  October 5, 2016

11

12  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              15